UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22821

FILED by RGS D.C.
SEP 2 1 2009
STEVEN M. LARIMORE
CLERK U S DIST CT
S. D. of FLA. - MIAMI

CIV - COOKE
MAGISTRATE
BANDSTRA

SECURITIES AND EXCHANGE COMMISSION, )
 )
Plaintiff, )
 )
v. )
 )
 )
REGIONS BANK, )
 )
Defendant. )
_____)

COMPLAINT

Plaintiff Securities and Exchange Commission alleges:

I.  INTRODUCTION

1.  This case involves the role of a United States-based bank as trustee of an investment plan through which unregistered broker-dealers, U.S. Pension Trust Corp. and U.S. College Trust Corp. (collectively, "USPT") defrauded approximately 14,000 investors by charging exorbitant, undisclosed commissions and fees in connection with the sale of mutual funds. Using a network of approximately 2,000 unregistered sales agents, USPT offers and sells to investors residing primarily in Latin America mutual funds available from well-known U.S. fund companies, through a trust created at a U.S. bank. Until March 2006, USPT did not disclose to new investors that it took up to 85% of investors' annual contributions, and as much as 18% of investors' lump-sum contributions, to pay exorbitant sales commissions to sales agents and a profits to itself.

2.  Regions (or a predecessor, Union Planters Bank, collectively "Regions" or the "Bank") has served as trustee of the plans since October 2001 and, in that capacity, entered into

individual trust agreements ("Trust Agreement") with each investor and followed USPT's instructions to distribute a portion of the investors' contributions to USPT and use the remainder of the contributions to purchase mutual funds. Regions knew or should have known, however, that these exorbitant commissions and fees were not disclosed in USPT's marketing materials or in any other document USPT provided to investors. Further, the trust agreement was misleading because it stated, among other things, that fees "may be paid" to USPT – when they always were – and, although it discloses Regions' own, comparatively nominal trust fees, did not disclose the nature and amounts of the exorbitant commissions and fees USPT charged to investors.

3. By engaging in the conduct described above, Regions violated Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§77q(a)(2) and 77q(a)(3)], and aided and abetted USPT's violations of Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78o(a)(1)].

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)]; and Sections 21(d), 21(e), and 27 of the Exchange Act of 1934 [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

5. Personal jurisdiction and venue are proper because Defendant Regions conducts business in the Southern District of Florida and because many of the Defendant's acts and transactions constituting violations of the Securities Act occurred in the Southern District of Florida.

## III. DEFENDANT

6. Regions is an Alabama state-charted bank providing banking services in sixteen states. Regions is the primary banking subsidiary of Regions Financial Corporation. Regions

2

Financial's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act. Regions became the trustee in connection with USPT's investment plans after it merged with Union Planters Corp. in July 2004. Union Planters began serving as trustee in October 2001, assuming the trustee duties from another national bank; the former trustee bank thereafter transferred the trust accounts maintained in connection with USPT's plans to Union Planters.

### IV.   OTHER RELEVANT ENTITIES

7. U.S. Pension Trust Corp. is a Florida corporation formed in December 1995, with its principal place of business in Coral Gables, Florida. U.S. Pension has never been registered with the Commission as a broker, dealer, or in any other capacity. On September 28, 2007, the Commission filed a civil injunctive action against U.S. Pension Trust and its principals in the United States District Court for the Southern District of Florida, charging them with violations of the antifraud and broker-dealer registration provisions under the federal securities laws. *SEC v. U.S. Pension Trust Corp.*, 07-22570-CIV-MARTINEZ (Sept. 28, 2007). That case remains pending.

8. U.S. College Trust Corp. is a Florida corporation formed in September 1997, with its principal place of business in Coral Gables, Florida. U.S. College has never been registered with the Commission as a broker, dealer, or in any other capacity. U.S. College is also charged with violations of the antifraud and broker-dealer registration provisions in the civil injunctive action filed by the Commission.

### V.   FACTUAL ALLEGATIONS

#### USPT's Fraudulent Offering

9. Since December 1995, USPT has offered and sold to investors residing primarily

in Latin America mutual funds (and at least one hedge fund) available from well-known U.S. fund companies, through several retirement and college investment plans. USPT's investment plans provide investors with the choice of making either monthly or annual contributions for multiple years or a single, lump-sum contribution, and a choice of up to ten different mutual funds in which to invest their funds. USPT's investment plans also include an insurance component for the annual-plan investors, which provides for payment of any remaining contribution amounts due under the plan should the investor die or become disabled.

10. Since 1996, USPT has contracted with several U.S. banks in connection with its investment plans. USPT's marketing materials state that the U.S. bank acts as a trustee on behalf of investors by safeguarding their contributions pursuant to a Trust Agreement each investor executes with the bank. The marketing materials tout USPT's investment experience and "high quality financial products" offered through its plans, and the safety of investing with USPT to Latin American investors by, among other things, emphasizing the importance of the trustee relationship that will be created between investors and the U.S. trustee bank through its investment plans.

11. From the inception of the plans until June 2006, USPT did not disclose anywhere in the marketing materials, or any other documents given to prospective investors, the exorbitant fees, commissions, and costs that it charged for the investments. Specifically, since its inception, USPT has charged annual plan investors fees ranging from 70% to 85% from investors' first year's contributions, 22% to 35% from investors' second through fifth year contributions, and up to 23% from investors' sixth through tenth year contributions. On lump-sum plans, USPT has charged from 12% to 18% from investors' single contributions. These fees are used to pay exorbitant commissions to sales agents, insurance premiums for annual plan investors, and a "net

profit" on every contribution for USPT.

12.     The only fees disclosed in the USPT marketing materials are those charged by the U.S. bank for its trust services. Although USPT revised its marketing materials in 2006 to disclose the commissions, fees, and profits they deduct from investors' contributions each year, it did not provide any of these new disclosures to existing investors who have continued to make contributions under their investment plans. Moreover, USPT continues to represent to existing investors that their contributions have generated returns from the time they began to participate in the investment plans.

### Regions as Trustee of USPT's Trust Plans

13.     Commencing in October 2001, Regions (or, more precisely, Union Planters) began serving as trustee to individual investors in connection with USPT's plans pursuant to a master agreement executed with USPT (the "Master Agreement"), under which Regions agreed to enter into individual trust agreements with each investor. The Master Agreement specified that as trustee, Regions would receive "contributions" from each investor, deposit those funds into a separate Regions bank account pending instructions from USPT and, thereafter, deposit to USPT's operating account that portion of the contribution to be used for payment of agent commissions, insurance premiums, and USPT's "net profit." The Master Agreement further provided that Regions would use the remaining balance of each contribution to purchase shares of the mutual funds selected by the investor. The Master Agreement, which is in English, was not provided to prospective investors.

14.     The Master Agreement also authorized USPT to "make use of [Regions'] name on the trust, and in the marketing and distribution" of USPT's investment plans. The agreement further provided that any advertising or marketing materials mentioning Regions' name "shall be

subject to prior written approval" by Regions. Regions' representatives reviewed the description of the Bank in USPT's marketing materials and drafted information about the Bank, and a description of its role as trustee, for inclusion in USPT's marketing brochure. Regions also developed a form Trust Agreement for use by the individual investors and a summary entitled "To the Participants of the Plan" ("Trust Summary"), based on the trust agreement and trust summary used by the predecessor bank trustee, and placed its logo and name on each document.

15.   Although USPT used different marketing brochures for its investment plans, its description of Regions and its role is consistent. USPT's marketing brochures emphasize the safety of investing through USPT's plans because Regions, a major U.S. bank "is one of the oldest financial services companies . . . [s]erving as a trustee for more than a century. . . ." USPT's brochure further states that Regions applies "the most prudent approach" in the "management of assets." The brochures further claim that USPT's plans are subject to oversight by "the Federal Reserve Bank, the Comptroller of the Currency, internal and external auditors, and regulation by the Securities and Exchange Commission."

16.   These statements are misleading because Regions did not "manage" trust assets, but rather, served as directed trustee. Moreover, USPT's investment plans were not subject to regulatory review. Finally, until June 2006, USPT's marketing brochures did not disclose the actual commissions, administrative costs, and other fees charged to investors.

17.   The only disclosure of fees to investors was in the Trust Agreement, which set forth Regions' fee for trust services, specifically, 1.5% of the value of the total assets held in trust, plus an additional $40 administrative fee Regions charged for each contribution. The Trust Agreement did not disclose the commissions and other fees charged by USPT in connection with the plans. Rather, the Trust Agreement informed investors that USPT or its affiliates "*may be*

6

*paid* fees by this trust, or the funds paid by the Grantor to the Trustee, for insurance placement, advisory, and other services provided to the Trustee or Grantor" (emphasis added). This statement is misleading because it states that fees "may be" paid when, in fact, fees and commissions have always been charged from every contribution.

18.  The other trust document given to investors, the Trust Summary, set forth a summary of Regions' services as trustee in connection with USPT's plan. The Trust Summary explained that, as trustee, Regions would be responsible for receiving the investors' contributions to the plan, and that "[o]nce the contributions are received, they will be allocated pursuant to USPT's instructions, that is, to pay insurance premiums, fees, and for investments in the mutual fund selected by you from the list of funds made available." The Trust Summary did not provide any additional information about the nature or amount of fees, including substantial commissions, which Regions withdrew from each contribution and credited to USPT's operating account at USPT's direction. Moreover, the Spanish version of the Trust Summary —translated by USPT—omitted the word "fees" altogether.

19.  At the commencement of the relationship, Regions also created a short video that USPT posted on its website. The video featured two employees from Regions' trust department who touted the history of the bank and Regions' trust services. The video welcomed USPT and its "customers" and claimed that Regions' trust department had been protecting trust clients' interests for over 100 years. The video served to assure prospective investors of the safety of investing with USPT because of Regions' role as trustee.

20.  From October 2001 through January 1, 2008 (when Regions ceased accepting new trust relationships), Regions processed the investors' packages and contributions for USPT's plans. Upon receiving the investor's contribution and completed application package (which

7

included the Trust Agreement, executed Trust Summary, and application for insurance, if applicable), Regions created individualized investor trust accounts at the Bank. Regions then deposited the contribution into a Regions' bank account, and disbursed those funds in accordance with instructions provided by USPT. Pursuant to USPT's instructions, Regions directed a portion of each contribution to USPT's operating account for payment of commissions, insurance premium, and USPT's "net profit." Regions used the remaining portion of the contribution to purchase the mutual fund shares for investors.

21. A Regions representative signed a certificate (prepared by USPT) after it received and processed each investor contribution. The certificate acknowledged the creation of a trust account, and identified the insurance policies and the mutual funds being held in trust on the investor's behalf. The certificate was misleading, however, because it showed the total amount of an investor's contribution, but did not reflect the amounts deducted from the contribution to pay sales commissions, insurance, and USPT's fees.

22. Regions holds the mutual fund shares in its name in omnibus accounts it created for each mutual fund offered by USPT. Although Regions ceased accepting new investor trust relationships in January 2008, it continued to receive additional contributions due under existing plans, as well as plan renewals, and processed each investor contribution in the same manner until August 2009. At that point, Regions ceased accepting or processing new investor contributions or renewals under the USPT plans.

23. From 1995 to the present, approximately 14,000 investors, mostly residing in Latin America, have invested over $255 million through USPT's investment plans. Regions, which has been trustee since October 2001, currently holds approximately $95 million in mutual fund assets on behalf of approximately 11,000 investors.

## VI. CLAIMS FOR RELIEF

### Regions Violated Sections 17(a)(2) and 17(a)(3) of the Securities Act

24. The Commission repeats and realleges paragraphs 1 through 23 of its Complaint.

25. From at least October 2001 through January 2008, Regions, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices and courses of business which operated as a fraud or deceit upon purchasers and prospective purchasers of such securities. A violation of these provisions may be established by a showing of negligence. *Aaron v. SEC*, 448 U.S. 680, 697 (1980).

26. By reason of the foregoing, Regions, directly and indirectly, violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

### Regions Aided and Abetted USPT's Violations of Section 15(a)(1) of the Exchange Act

27. The Commission repeats and realleges paragraphs 1 through 23 of its Complaint.

28. At all times relevant to this Complaint, USPT, directly and indirectly, by the use of the means and instrumentality of interstate commerce, while acting as a broker or dealer engaged in the business of effecting transactions in securities for the accounts of others, effected transactions in securities, or induced or attempted to induce the purchase and sale of securities, without registering as a broker-dealer in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

29. By reason of the foregoing, USPT violated Section 15(a)(1) of the Exchange Act

[15 U.S.C. § 78a(1)].

30.     From at least October 2001 through August 2009, Regions knowingly or recklessly provided substantial assistance to and thereby aided and abetted USPT in connection with its violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78a(1)].

31.     By reason of the foregoing, Regions aided and abetted USPT's violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78a(1)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Disgorgement

Enter a Final Judgment ordering Regions to pay disgorgement, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### II.

### Penalties

Enter a Final Judgment ordering Regions to pay a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and/or Section 21(d) of the Exchange Act [15 U.S.C.§ 78(d)(3)].

### III.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## IV.

### **Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

September 21, 2009

                                            Respectfully submitted,

By:      _/s/ Amie Riggle Berlin_____

Amie Riggle Berlin
Senior Trial Counsel
Florida Bar No. 630020
Direct Dial: (305) 982-6322
E-mail: berlina@sec.gov

Thierry Olivier Desmet
Branch Chief
Florida Bar No. 0143863
Direct Dial: (305) 982-6374

Drew D. Panahi
Senior Counsel
California Bar No. 224352
Direct Dial: (305) 416-6295

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

**%JS 44** (Rev. 2/08)

# 09-22821 CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

FILED by _____ D.C.
SEP 2 1 2009
STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

### I. (a) PLAINTIFFS
SECURITIES AND EXCHANGE COMMISSION

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Amie Riggle Berlin, Senior Trial Counsel, SEC, Suite 1800
Miami, FL 33131 (305)982-6322

### DEFENDANTS
REGIONS BANK

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

CIV- COOKE
MAGISTRATE
BANDSTRA

Attorneys (If Known) Paul Huey Burns, Esq., Dechert LLP
1775 I Street, NW
Washington, DC 20006

**(d)** Check County Where Action Arose: ☑ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☑ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
|  |  | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  |  |  | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** / ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land |  / ☐ 530 General | **IMMIGRATION** |  |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 462 Naturalization Application |  |  |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus-Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition |  |  |  |

### V. ORIGIN (Place an "X" in One Box Only)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☑ YES ☐ NO
JUDGE Jose E. Martinez   DOCKET NUMBER 07-22570-CV-Martinez/Brown

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): 15 U.S.C. §§ 77t(b), 77t(d), 77v(a); §§78u(d), 78u(e) and 78aa
VIOLATION OF FEDERAL SECURITIES LAWS

LENGTH OF TRIAL via ____ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD _____
DATE 9-21-09

FOR OFFICE USE ONLY
AMOUNT Waived   RECEIPT # ____   IFP ____